UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CR-60047-RUIZ

UNITED STATES OF AMERICA,

v.

BRANDI JOHNSON,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

The United States of America, through its undersigned Assistant United States Attorney, hereby files this Response in Opposition to Defendant's Motion for Early Termination of Supervised Release, and in support states as follows:

On July 6, 2011, the defendant pled guilty to Counts One and Two of an eight-count Indictment which charged her with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and with conspiracy to commit identity theft and access device fraud, in violation of 18 U.S.C. § 371. Thereafter, on September 30, 2011, the Honorable Ursula Ungaro sentenced the defendant to 120 months in prison to be followed by five (5) years of supervised release, and ordered her to pay $408,082.18 in joint and several restitution with two additional co-defendants.

The Defendant was subsequently released from incarceration on June 24, 2020 and began her five year term of supervised release, within the Southern District of Florida. Supervision is scheduled to terminate in July of 2025. Thus, the Defendant has only completed 21 of her 60 months of supervision. On March 22, 2022, Defendant Johnson filed a Motion to Early Terminate Supervised Release (DE 481).

1

The undersigned AUSA has conferred with United States Probation Officer Samantha Reid, the Defendant's supervising probation officer within the Southern District of Florida, who indicated that while the defendant has remained compliant on supervision and has steady and gainful employment, she has completed only about 1/3 of her term of supervision and still owes approximately $386,693.69 in restitution. Accordingly, for those and the following reasons, the United States is opposed to early termination of supervision.

In the instant case, from December 2008 until mid-March 2011, the Defendant and eleven other co-conspirators committed bank fraud and identity theft, and defrauded victims of more than $1.2 million dollars. During the above time frame, as alleged in the indictment and admitted to in the factual proffer, Brandi Johnson and another co-conspirator independently organized and carried out credit card fraud and identity theft schemes wherein each relied on the assistance of intermediaries who sought and obtained victims' personal, sensitive identifying information (names, dates of birth, social security numbers, etc.) from corrupt employees of local physicians' offices, a local school board employee, relatives and/or other intermediaries. After the victims' personal identifiers were stolen, Johnson and others obtained credit reports pertaining to the victims and ascertained the victims' credit card and bank account information. They then targeted victims who had extensive lines of credit or credit card accounts which they infrequently used; and those who had accounts with Chase bank, Discover Financial Services and Capital One. Moreover, as outlined in the PSI, a four-level aggravating role increase was recommended by U.S. Probation, and ultimately applied by Judge Ungaro at sentencing to Defendant Johnson for her role in organizing and operating a credit card fraud and identity theft scheme that involved five or more criminal participants. Ultimately, Johnson defrauded or intended to defraud at least 40 victims (all of whom were Broward County School Board employees) of at least $407,044. As such, this was

an extremely serious and far reaching fraud offense, which greatly affected dozens of innocent victims.

Moreover, as even the Defendant points out, "since I was 12 years old, I have been getting into trouble and skirting the law and responsibilities. I have the criminal history and arrest record to show for it too, with over 30 arrests in my history." (DE 481 at 2). Acordingly, it comes as no surprise that at the time of sentencing, the Defendant's criminal history category was a VI, having amassed over 13 criminal history points. Additionally, she committed her offense conduct while serving concurrent terms of state probation for other criminal offenses. Even the Defendant herself admitted that "[o]n paper, I am a high risk to re-offend. Not only do I have a long history of arrests and convictions, statistics are stacked against me as well. Defendants in the 40-49 year old age group sentenced in Criminal History Category of VI are rearrested 21% more often than the average released federal defendant." (DE 481 at 9)

Additionally, while in custody, she amassed over 22 disciplinary violations ranging from Insolence to Staff, Assault, Threats, Organizing a Protest, Mail Abuse, Fighting, and other internal charges, which resulted in numerous sanctions including a loss of gain time, loss of commissary privileges, loss of phone privileges, loss of email privilegs, loss of visitation privileges, and disciplinary segregation, among others. Most strikingly, she was caught mailing out a letter that contained explicit instruction on how to commit financial fraud, with detailed steps that the recipient was to take to commit the same type of fraud for which the Defendant was incarcerated.

While the Government is certainly cognizent of the strides the Defendant has taken while on supervision to date and applauds her commitment to changing her life, the fact remains that this Defendant has repeatedly demonstrated that she cannot follow the law, either in or out of custody. Terminating a Defendant's supervision only 21 months into a 60 month term because she has self-admitedly shown promise is not a justification for early termination. As multiple courts have

3

pointed out, "mere compliance with the conditions of release is not enough to merit early termination of supervised release because '[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release." United States v. McKay, 352 F.Supp.2d 359, 361 (E.D.N.Y.2005); *see also* United States v. Medina, 17 F.Supp.2d 245, 247 (S.D.N.Y.1998) (finding that while the defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"). Rather, "a defendant must show something 'of an unusual or extraordinary nature' in addition to full compliance."United States v. Etheridge, 999 F.Supp.2d 192, 196 (D.D.C. 2013) (*quoting* United States v. Caruso, 241 F.Supp.2d 466, 469 (D.N.J.2003)). United States v. Mathis-Gardner, 110 F. Supp. 3d 91, 93–94 (D.D.C. 2015)

This high risk defendant, who was enhanced at sentencing for being a supervisor/leader of criminal activity in a massive identity theft fraud ring, and who has previously shown a propensity for continued criminal activity, deserves the full term of supervision, and the Government respectfully prays that this Honorable Court deny the Defendant's Motion for Early Termination.

Accordingly, the government objects to the Defendant's request for early termination.

        Respectfully submitted,

        JUAN ANTONIO GONZALEZ
        UNITED STATES ATTORNEY

By:  /s/ Marc S. Anton
      MARC S. ANTON
      Assistant U.S. Attorney
      Florida Bar No. 0148369
      500 E. Broward Blvd., Suite 700
      Fort Lauderdale, FL 33394
      Tel: (954) 660-5096
      Fax: (954) 356-7336

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on April 25, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and mailed a copy of the response to Brandi Johnson, 1402 NW 3rd Street, Dania Beach, FL 33004.

                                                / s/ Marc S. Anton_____
                                                Assistant U.S. Attorney